**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YVONNE WALKER, | CASE NO. 1:19-cv-06921 |
| Plaintiff, | |
| v. | Honorable Virginia M. Kendall |
| WESTLAKE FINANCIAL SERVICES, LLC, | |
| Defendant. | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIM**

In response to Plaintiff's complaint, Defendant, Westlake Financial Services, Inc. ("Westlake Financial Services"), by its attorneys, states as follows for its answer, affirmative defense, and counterclaim:

**ANSWER**

1.      Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") under 815 ILCS 505/1 *et seq.*, for Defendant's unlawful conduct.

**ANSWER:**     Westlake Financial Services admits that Plaintiff has filed a lawsuit against Westlake Financial Services, and that Plaintiff seeks recovery under the TCPA and the ICFA. Westlake Financial Services denies the remaining allegations in this paragraph.

2.      This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

**ANSWER:**     Westlake Financial Services does not contest jurisdiction. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois and a substantial portion the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

**ANSWER:**    Westlake Financial Services does not contest venue.  Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

4.      Plaintiff is a consumer person [*sic*] over 18 years-of-age residing in Chicago, Illinois, which is located within the Northern District of Illinois.

**ANSWER:**    Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

5.      Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

**ANSWER:**    Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

6.      Defendant specializes in the acquisition and servicing of prime to subprime automotive retail installment contracts. Defendant's principal place of business is located at 4751 Wilshire Boulevard, #100, Los Angeles, California 90010. Defendant regularly uses mail, telephone, and credit reporting for the principal purpose of collecting debts from consumers on a nationwide basis, including consumers in the State of Illinois.

**ANSWER:**    Westlake Financial Services admits that Westlake Financial Services' business includes acquiring and servicing motor vehicle retail installment sales contracts. Westlake Financial Services admits that Westlake Financial Services' main office is 4571 Wilshire Boulevard, #100, Los Angeles, California 90010.  Westlake Financial Services admits that Westlake Financial Services uses the mail and telephone to obtain payment from customers on obligations due to Westlake Financial Services.  Westlake Financial Services admits that Westlake Financial Services has customers in Illinois.  Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

7.     Defendant is a "person" as defined by 47 U.S.C. §153(39).

**ANSWER:**     Westlake Financial Services admits that 47 U.S.C. §153(39) states that a "'person' includes an individual, partnership, association, joint-stock company, trust, or corporation." Westlake Financial Services admits that Westlake Financial Services is a limited-liability corporation. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

8.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**ANSWER:**     Westlake Financial Services admits that Westlake Financial Services placed calls to Plaintiff. Westlake Financial Services admits that Plaintiff alleges that, in placing calls to Plaintiff, Westlake Financial Services violated the TCPA and the ICFA. Westlake Financial Services denies that Westlake Financial Services violated the TCPA or the ICFA. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

9.     In 2018 [*sic*], Plaintiff purchased a 2016 Toyota Corolla, which she financed through Defendant.

**ANSWER:**     Westlake Financial Services admits that, in 2017, Plaintiff entered into a retail installment sales contract for the purchase of a 2016 Toyota Corolla. Westlake Financial Services affirmatively states that Westlake Financial Services is the assignee of the retail installment sales contract. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

10.     While Plaintiff initially made monthly payments towards the vehicle, she subsequently lost her job, causing her significant financial distress.

**ANSWER:**     Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

11.    As a result, Plaintiff fell behind on her monthly payments owed to Defendant, thus incurring debt ("subject debt").

**ANSWER:**    Westlake Financial Services admits that Plaintiff failed to comply with her payment obligations under her retail installment sales contract.  Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

12.    Shortly thereafter, Plaintiff began receiving calls to her cellular phone, (708) XXX-7160, from Defendant.

**ANSWER:**    Westlake Financial Services admits that it placed calls to Plaintiff on her cellular phone with the number ending in 7160.  Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph

13.    At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in -7160. Plaintiff is and always has been financially responsible for the cellular phone and its services.

**ANSWER:**    Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

14.    Defendant has used several phone numbers when placing collection calls to Plaintiff's cellular phone, including but not limited to (888) 739-9201.

**ANSWER:**    Westlake Financial Services admits the allegations in this paragraph.

15.    Upon information and belief, the above-referenced phone number ending in -9201 is regularly utilized by Defendant during its debt collection activities.

**ANSWER:**    Westlake Financial Services admits that, in connection with servicing Plaintiff's account, Westlake Financial Services placed calls from the number ending in 9201. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

16.     During answered calls from Defendant, Plaintiff experiences a noticeable pause, lasting a handful of seconds in length, and has to repeatedly say "hello" before a live representative begins to speak.

**ANSWER:**     Westlake Financial Services lacks knowledge or information sufficient to

form a belief about the truth of the allegations in this paragraph.

17.     Furthermore, Defendant has also used pre-recorded messages when placing collection calls to Plaintiff's cellular phone.

**ANSWER:**     Westlake Financial Services admits that its calls to Plaintiff sometimes use

a pre-recorded message.  Westlake Financial Services lacks knowledge or information sufficient

to form a belief about the truth of the remaining allegations in this paragraph.

18.     Upon speaking with Defendant, Plaintiff was informed that Defendant was seeking to collect upon the subject debt.

**ANSWER:**     Westlake Financial Services admits that, in several calls with Plaintiff,

Westlake Financial Services requested payment on Plaintiff's account.  Westlake Financial

Services lacks knowledge or information sufficient to form a belief about the truth of any

remaining allegations in this paragraph.

19.     Defendant's harassing collection calls caused Plaintiff to answer and demand that it cease calling her cellular phone.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

20.     Defendant willfully ignored Plaintiff's demands and continued placing phone calls to Plaintiff's cellular phone, often calling multiple times during the same day.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

21.     Plaintiff has received not less than 45 phone calls from Defendant since demanding that it stop contacting her.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

22.     Frustrated over Defendant's conduct, Plaintiff spoke with Sulaiman regarding her rights, resulting in expenses.

**ANSWER:**    Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

23.    Plaintiff has been unfairly and unnecessarily harassed by Defendant's actions.

**ANSWER:**    Westlake Financial Services denies the allegations in this paragraph.

24.    Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to: invasion of privacy, aggravation that accompanies collection telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

**ANSWER:**    Westlake Financial Services denies the allegations in this paragraph.

## COUNT I

25.    Plaintiff repeats and realleges paragraphs 1 through 24 as though fully set forth herein.

**ANSWER:**    Westlake Financial Services restates its answers to those paragraphs.

26.    The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") *or* pre-recorded messages without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

**ANSWER:**    Westlake Financial Services admits that, in section 227(b), the TCPA states that "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States -- (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -- … (iii) to any telephone number assigned to a … cellular telephone service…."    Westlake Financial Services admits that, in section 227(a)(1), the TCPA states that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity -- (A) to store or produce telephone

6

numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Westlake Financial Services denies any remaining allegations in this paragraph.

27.     Defendant used an ATDS *and* pre-recorded messages in connection with its communications directed towards Plaintiff's cellular phone. The noticeable pause that Plaintiff experienced upon answering Defendant's calls, as well as the fact that Plaintiff had to repeatedly say "hello" before she was connected with a live representative, is instructive that an ATDS was being utilized to generate the phone calls. Additionally, Defendant's continued contacts after Plaintiff demanded that the phone calls stop further demonstrates Defendant's use of an ATDS. Moreover, the nature and frequency of Defendant's contacts points to the involvement of an ATDS.

**ANSWER:**     Westlake Financial Services admits that, in an attempt to communicate with Plaintiff, Westlake Financial Services used automated technology and pre-recorded messages. Westlake Financial Services denies that Westlake Financial Services' automated technology constitutes an ATDS. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the allegations in the second sentence of this paragraph. Westlake Financial Services denies the allegations in the third sentence of this paragraph. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in the fourth sentence of this paragraph.

28.     Defendant violated the TCPA by placing at least 45 phone calls to Plaintiff's cellular phone using pre-recorded messages and an ATDS without her consent. Any consent that Plaintiff may have given to Defendant was specifically revoked by Plaintiff's demands that it cease contacting her.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

29.     The calls placed by Defendant to Plaintiff were regarding collection activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

**ANSWER:**     Westlake Financial Services admits that, in section 227(b)(1)(A)(i), the TCPA states that is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -- (i) to any emergency telephone line (including any

7

'911' line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency)." Westlake Financial Services admits that, in calling Plaintiff, Westlake Financial Services sought, among other things, to obtain payment on Plaintiff's account. Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

30.     Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

WHEREFORE, Westlake Financial Services respectfully requests that this Court enter judgment in Westlake Financial Services' favor and against Plaintiff, and award Westlake Financial Services its costs and such other relief as this Court deems proper.

## COUNT II

31.     Plaintiff restates and realleges paragraphs 1 through 30 as though fully set forth herein.

**ANSWER:**     Westlake Financial Services restates its answers to those paragraphs.

32.     Plaintiff is a "person" and "consumer" as defined by 815 ILCS 505/1(c) and (e) of the ICFA.

**ANSWER:**     Westlake Financial Services lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

33.     Defendant's collection calls to Plaintiff are "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

**ANSWER:**     Westlake Financial Services admits that courts in Illinois have found that collection activities may constitute "trade" or "commerce" under 815 ILCS 505/1(f) of the ICFA. Westlake Financial Services admits that, in calling Plaintiff, Westlake Financial Services sought,

8

among other things, to obtain payment on Plaintiff's account. Westlake Financial Services lacks

knowledge or information sufficient to form a belief about the truth of any remaining allegations

in this paragraph.

34.     The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use or employment of
> any   deception,   fraud,   false   pretense,   false   promise,
> misrepresentation or the concealment, suppression or omission of
> any material fact, with intent that others rely upon the
> concealment, suppression or omission of such material fact . . . in
> the conduct of any trade or commerce are hereby declared
> unlawful whether any person has in fact been misled, deceived or
> damaged thereby." 815 ILCS 505/2.

**ANSWER:**     Westlake Financial Services admits that this paragraph quotes from a

section of the ICFA.    Westlake Financial Services denies any remaining allegations in this

paragraph.

35.     Defendant violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or
practice in contacting Plaintiff. It was unfair for Defendant to relentlessly contact Plaintiff
through means of an ATDS and pre-recorded messages after Plaintiff had notified Defendant to
stop calling. Yet, Defendant placed at least 45 phone calls to Plaintiff's cellular phone with the
intent of harassing Plaintiff into making a payment. Defendant ignored Plaintiff's demands and
continued its harassing conduct. Defendant's continued conduct prompted Plaintiff to file this
action.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

36.     Following its characteristic behavior in placing voluminous calls to consumers,
Defendant engaged in an unfair and deceptive act, willfully done with the hope that Plaintiff
would be compelled to make payment. Further, Defendant intended that Plaintiff rely on its
unfair and deceptive conduct. Defendant had been notified of Plaintiff's demands that it cease
calling her, but yet Defendant still relentlessly contacted Plaintiff.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

37.     Plaintiff lacks a meaningful choice to go about avoiding Defendant's contacts,
which places an unreasonable burden on Plaintiff to try and address Defendant's conduct. This
further underscores the immoral, unethical, oppressive, and unscrupulous nature of Defendant's
conduct which is contrary to public policy.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

38.     The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

39.     Defendant's conduct of placing incessant telephone calls to an individual without that individual's consent involves trade practices directed to the market generally and which otherwise implicate consumer protection concerns.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

40.     Plaintiff was the subject of Defendant's incessant and relentless collection efforts. The nature of Defendant's conduct in placing relentless phone calls after consent for such calls had been explicitly revoked is behavior which impacted Plaintiff and which would similarly impact other consumers. Such conduct raises serious consumer protection concerns as entities like Defendant must not be given free rein to harass consumers by placing excessive telephone calls without consumer consent. The relief requested below serves the interests of consumers by ensuring this pervasively unfair conduct is addressed.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

41.     The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

**ANSWER:**     Westlake Financial Services admits that this paragraph quotes from a section of the ICFA.   Westlake Financial Services denies any remaining allegations in this paragraph.

42.     As pled in paragraphs 21 through 24, Plaintiff has suffered actual damages as a result of Defendant's unlawful practices. As such, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a.

**ANSWER:**     Westlake Financial Services denies the allegations in this paragraph.

43.     An award of punitive damages is appropriate because placing at least 45 collection phone calls to Plaintiff's cellular phone without permission is hallmark of outrageous, willful, and wanton behavior. Upon information and belief, Defendant regularly engages in the

above described behavior against consumers in Illinois and for public policy reasons should be penalized.

**ANSWER:** Westlake Financial Services denies the allegations in this paragraph.

WHEREFORE, Westlake Financial Services respectfully requests that this Court enter judgment in Westlake Financial Services' favor and against Plaintiff, and award Westlake Financial Services its costs and such other relief as this Court deems proper.

## AFFIRMATIVE DEFENSE

### Arbitration

1.      Plaintiff entered into a retail installment sales contract ("Retail Installment Sales Contract") for the purchase of a 2016 Toyota Corolla ("Vehicle"). *See* Exhibit A hereto.

2.      Westlake Financial Services is the assignee of the Retail Installment Sales Contract.

3.      The Retail Installment Sales Contract contains an arbitration provision.

4.      Under the arbitration provision, Plaintiff agreed that any claim relating to the Retail Installment Contract or the Vehicle may be decided in arbitration and not in court.

## COUNTERCLAIM

### Breach of Contract

Westlake Financial Services, by its attorneys, states as follows for its counterclaim against Plaintiff:

1.      Plaintiff entered into a retail installment sales contract ("Retail Installment Sales Contract") for the purchase of a 2016 Toyota Corolla ("Vehicle"). *See* Exhibit A hereto.

2.      Westlake Financial Services is the assignee of the Retail Installment Sales Contract.

3.   Under the Retail Installment Sales Contract, Plaintiff agreed to make total payments of $33,424.56.

4.   The Retail Installment Contract states that Plaintiff is in default if, among other things, Plaintiff "breaks any agreement in" the Retail Installment Sales Contract.

5.   The Retail Installment Sales Contract states that, if Plaintiff defaults, Westlake Financial Services may take the Vehicle.

6.   The Retail Installment Sales Contract states that, if the Vehicle is repossessed, Westlake Financial Services may sell the Vehicle.

7.   The Retail Installment Sales Contract states that, "[i]f money from the sale is not enough to pay the amount [Plaintiff] owe[s], [Plaintiff] must pay the rest."

8.   Plaintiff failed to pay the total payments due under the Retail Installment Sales Contract.

9.   The Vehicle was repossessed and sold.

10.   After the sale of the Vehicle, there remains a balance of $7,057.89 ("Deficiency Balance").

11.   Plaintiff has not paid the Deficiency Balance.

12.   Plaintiff is in default under the Retail Installment Sales Contract.

13.   Plaintiff has breached the Retail Installment Sales Contract.

WHEREFORE, Westlake Financial Services respectfully requests a judgment finding that Plaintiff breached the Retail Installment Sales Contract, and ordering Plaintiff to pay Westlake Financial Services the Deficiency Balance of $7,057.89 plus other fees and charges as permitted under the Retail Installment Sales Contract and applicable law.

12

Dated: January 23, 2020                    **WESTLAKE FINANCIAL SERVICES, LLC,**
                                           Defendant


                                           By: /s/ Scott J. Helfand
                                                 One of Its Attorneys

Scott J. Helfand
Scott.Helfand@huschblackwell.com
HUSCH BLACKWELL LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
(312) 655-1500
(312) 655-1501 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I, Scott J. Helfand, an attorney, hereby certify that a true and correct copy of the foregoing, **Defendant's Answer, Affirmative Defense, and Counterclaim**, was served electronically upon counsel of record:

> Nathan Charles Volheim
> <u>nvolheim@sulaimanlaw.com</u>
>
> Alejandro Emmanuel Figueroa
> <u>alejandrof@sulaimanlaw.com</u>
>
> Eric Donald Coleman
> <u>ecoleman@sulaimanlaw.com</u>
>
> Taxiarchis Hatzidimitriadis
> <u>thatz@sulaimanlaw.com</u>

by the filing of said document through the Court's electronic filing system on this 23rd day of January 2020.

s/ Scott J. Helfand

14